IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY M. RANIER, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 10-498-GMS |
| | ) |
| DELAWARE DEPARTMENT OF | ) |
| CORRECTION, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, Jeffrey M. Rainier, Sr. ("Rainier"), an inmate at the James T. Vaughn

Correctional Center ("VCC), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1]

(D.I. 2.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915. (D.I. 5.) The court now proceeds to review and screen the complaint pursuant

to 28 U.S.C. § 1915 and § 1915A.

**I. BACKGROUND**

Rainier has been housed in the Security Housing Unit ("SHU") at the VCC since April 4,

2008. On October 29, 2008, he was placed in a "strip cell" in pre-hearing detention pending the

outcome of a disciplinary hearing and remained there for fifteen days, until November 12, 2008.

He complains of the conditions of confinement and frequent strip searches during that time

including fully nude strip searches three times per day, every day, every shift. (D.I. 2, ¶ 72.) He

was required to fully strip, lift his genitals, bend over and spread his buttocks for a visual

inspection, squat and cough, lift his feet, open his mouth, and run his fingers through his hair.

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him
of a federal right, and that the person who caused the deprivation acted under color of state law.
*West v. Atkins,* 487 U.S. 42, 48 (1988).

(*Id.* at ¶ 73.) Rainier claims that the searches were unreasonable because he did not leave his cell and was stripped searched upon his initial placement in the cell.

On November 12, 2008, Rainier was moved to the 19-B Wing and remained there until February 4, 2009. On that day he received a commissary receipt and discovered that money was missing from his account. Inmates were taunting him about the issue. Rainier asked the defendant Sgt. Samuel Bane ("Bane") to move him and informed him about the missing money. Bane denied the request to move but advised that he would look into the money issue. Next, Bane served Rainier his lunch and, at that time, Rainier told Bane that he was suicidal and wanted to see mental health or a lieutenant. Rainier waited for mental health for several hours, but no one arrived. At approximately 3:00 p.m., Rainier cut his inside left arm with a razor blade. Within fifteen minutes Rainier was taken to medical and treated.

Mental health placed Rainier on a suicide watch, but he was housed in the disciplinary segregation unit rather than the medical unit. He complains of the conditions of confinement and strip/cavity searches while housed there conducted by the defendants John Doe Officers ("Doe(s)") and Lt. Ronald McCarty ("McCarty"), and fully nude strip searches conducted by Staff Lt. Karen Hawkins ("Hawkins"), Lt. Paul Harvey ("Harvey"), Lt. Smith ("Smith"),[2] Sgt. Henry ("Henry"), Sgt. Michael Bryan ("Bryan"), Sgt. Bayne ("Bayne"), Correctional Officer Mohr ("Mohr"), Lt. Maggielean Neal ("Neal"), Correctional Officer Boone ("Boone"), Correctional Officer D. Scott ("Scott"), Lt. Stephen Furman ("Furman"), Lt. Burman ("Burman"), Lt. Christopher Cessna ("Cessna"), Doe(s), McCarty, Sgt. John Burton ("J.

---

[2]There are no claims alleged against Smith and, therefore, he will be dismissed as a defendant.

Burton"), Johnson[3], and Correctional Officer Gregory ("Gregory"). When he was initially placed on suicide watch, Rainier was subjected two to body cavity searches in less than sixteen hours. Similar to the time he spent in pre-hearing detention, body cavity/strip searches were conducted three times per day, every day during the fifteen to twenty days he was on suicide watch. (*Id.* at ¶ 100.)

On February 8, 2009, J. Burton, Gregory, and Doe(s) handcuffed Rainier and dragged him from his cell, and McCarty gave an order to search the cell. He alleges that the defendants ripped the bandages from his arm. Rainier placed his mattress over the window upon his return to the cell and was ordered by McCarty to remove it. Rainier refused. Shift Commander Cpt. Burton ("Burton") assembled the Quick Response Team ("QRT") and then spoke to Rainier who agreed to uncover the window and the mattress was confiscated.

Twenty minutes later Rainier needed to use the toilet, but the one in his cell did not work. He asked Mohr and Scott to move him to a cell with a working toilet because he needed to defecate. Mohr and Scott unsuccessfully attempted to repair the toilet. They advised Bryan of the situation who stated that Rainier could sit in his cell and smell the odor. Rainier did not want to smell the odor all day and, in turn, defecated on the cell floor so that the correctional officers would be forced to move him to a different cell.

Rainier was informed by Bryan that he was being placed in black box restraints for twenty-four hours for defecating on the floor. The black box restraints consist of handcuffs, black box, waist chain, and shackles, and is used for transportation. Bryan checked the restraints and Boone said to make them tighter. Bryan pulled the waist chain tighter causing pain and

---

[3]Not a named defendant.

injuries to Rainier's ankles, left side, and right hand. Once Rainier was fully restrained, Bryan forced him to walk to the pile of feces, grabbed his neck and attempted to force his face down towards the pile. Bryan told Rainier if he defecated in the cell again, he would make Rainier eat it. Bryan removed Rainier from the cell with such force that the shackles dug into his legs causing cuts and bruises. Once they were in the hallway, Bryan slammed Rainier's head into the lockers, grabbed his throat, and yelled obscenities.

Rainier, who was on suicide watch, was placed in an empty cell for twenty-four hours wearing only a Ferguson gown.[4] The cell had no sink, toilet, or bed. Rainier was given a nutra-loaf but he was unable to place the food in his mouth because his hands were cuffed and chained to his front pelvic area, and the defendants Correctional Officers Jason Rash ("Rash") and Mike Malloy ("Malloy") would not remove the cuffs and chains.[5] Rainier alleges that prison policy provides that a nutra-loaf may be served for no more than seven days, but he was placed on the nutra-loaf diet for eighteen consecutive days.

That evening, Rainier informed Malloy and Rash that he needed to defecate again and asked to use the toilet. Malloy informed Rainier that Bryan said he could go to the toilet, but the restraints could not be removed. Bryan said that Rainier was "on his own" to clean himself. Rainier pleaded with Malloy and explained that with the restraints he could not lift the gown over

---

[4]A Ferguson gown is specifically designed to keep inmates from injuring themselves. It is a sturdily quilted, collarless, sleeveless, gown with adjustable openings at the shoulders and down the front that are closed with nylon hook-and-loop fasteners and designed so that it is too tough to tear and too bulky to make a noose. http://www.preventsuicide.com/index.htm.

[5]Plaintiff alleges that a nutra-loaf sanction must be ordered by the security chief. In this case, either the defendant Major Scarborough ("Scarborough") or the defendant Major Costello ("Costello").

-4-

his buttocks to sit on the toilet, let alone clean himself when he was finished, but Malloy repeated those were his orders. Rainier informed the defendants that if he could not clean himself that he would again defecate on the floor. Rainier waited a bit and then defecated on the floor while Boone, Mohr, Rash, Malloy, Scott, and Bryan watched, laughed, and made jokes. Rainier had open cuts on his ankles with feces and urine all over his legs, feet, between his buttocks, and all over the inside of his gown.

Neal was notified and she instructed Bryan to issue Rainier a disciplinary write-up.[6] The HazMat crew, accompanied by Neal, came to clean the room. Rainier showed Neal the feces on his lower legs and feet and told her it was all over the inside of his gown and between his buttocks, but she told Rainier that he could "sit it in until tomorrow."[7] D.I. 2 ¶ 144.) He remained dirty until approximately 8:30 a.m. the next morning, February 9, 2009.

In the meantime, that evening Scott brought Rainier a serving of nutra-loaf on a plate. When he asked could he eat with the restraints on, she threw the plate on the floor and told Rainier to eat it like a dog. Once the 12:00 a.m. to 8:00 a.m. shift started on February 9, 2009, J. Burton and Gregory loosened the restraints due to swelling and loss of color. Harvey removed the restraints at 8:40 a.m. on February 9, 2009. Rainier informed Harvey he had been assaulted by Bryan, and Harvey called medical. He escorted Rainier to the shower and Rainier received a clean gown and medical treatment.

---

[6] It was later dismissed.

[7] Rainier threatened to sue the defendants and the defendants threatened Rainier with more prison time.

-5-

In June 2009, after spending some nine days in the hole, the defendant Sgt. Wilfred Beckles ("Beckles") ordered Rainier's transfer to the D-Wing. While housed in the D-Wing inmates threatened Rainier's life, threw urine and feces under his cell door, and spit in his face in front of a correctional officer. Rainier wrote a letter to the defendant Deputy Warden Klein ("Klein") regarding threats on his life and other acts directed towards him. He advised Klein that the inmates were waiting for Rainier's transfer to Unit 21 "so they could 'get the plaintiff,'" and asked Klein to sent him to protective custody. (D.I. 2, ¶ 161.) His request was forwarded to Hawkins and then to the defendant Lt. Mark D. Daum ("Daum").[8] Daum searched Rainier's cell and interviewed him. Rainier was told there were no spare beds in protective custody.

On February 5, 2010, Rainier received a memorandum from the defendant Counselor Linda Kemp ("Kemp") informing him that he was being transferred for good behavior. Rainier told Kemp he could not be moved due to threats on his life. She did not respond to his letter. On February 10, 2010, Rainier was transferred and placed in a cell with inmate Bernard Drozdowski ("Drozdowski"). Rainier asked to see a mental health counselor and expressed his concerns that Drozdowski was mentally ill and refused to take his medication. Rainier was told to alert someone immediately if Drozdowski stopped his medication. Rainier alleges that medical mental health and security administration were aware of Drozdowski's mental illness and instability.

On the morning of March 30, 2010, Drozdowski initiated a fight with Rainier. Once the fight was over Drozdowski apologized and said that he "made a mistake." Rainier told Drozdowski that he could not stay in a cell with him. When chow was served Rainier informed

_____

[8]Misspelled on the court docket as "Duam."

-6-

Sgt. Mason of the morning's events.[9] She separated Rainier and Drozdowski. Rainier was examined by medical. He is currently on chronic care as a result of a lower back injury that occurred during the Drozdowski incident. Rainier received a write-up for fighting, was found guilty by Daum, and given fifteen days in isolation. Also, on March 30, 2010, Rainier was ordered to pack his belongings for a transfer to Unit 21. Rainier refused and asked to speak to Daum. Daum opened Rainier's cell door and sprayed two cans of capstun into the cell. Rainier was taken to isolation.

While in isolation, Rainier spoke to Lt. Savage who acknowledged that Drozdowksi was crazy, but due to circumstances he was sending Rainier back to the same unit.[10] Rainier appealed the write-up and wrote to Klein and Kemp regarding his safety concerns. Klein did not respond to the letter, but Kemp did. On April 9, 2010, she advised Rainier that she was aware of his problem, but that she could not stop the move; that Klein and Daum were "the ones with authority." (D.I. 2, ex. 22.)

Counts I and II of the complaint allege violations of the Eighth and Fourteenth Amendments. Counts II and IV allege supplemental state claims. The defendants are sued in their individual and official capacities. Rainier seeks compensatory and punitive damages and injunctive relief.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a

---

[9]Sgt. Mason is not a named defendant.

[10]Lt. Savage is not a named defendant.

-7-

defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Rainier proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court

must grant Rainier leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.– , 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Rainier has a "plausible claim for relief."[11] *Id.* at 211. In other words, the complaint must do more than allege Rainier's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*,129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[11]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

## III. DISCUSSION

### A. Eleventh Amendment Immunity

The Delaware Department of Correction ("DOC"), an agency of the State of Delaware, is named as a defendant. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh,* 438 U.S. 781 (1978)). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89 (1984); *see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (noting the inapplicability of *Ex Parte Young,* that permits suits for prospective injunctive relief against state officials acting in violation of federal law, to state or state agencies which retain their immunity against all suits in federal court.).

The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Ospina v. Department of Corr.,* 749 F. Supp. 572, 579 (D. Del. 1990). Hence, as an agency of the State of Delaware, the DOC is entitled to immunity under the Eleventh Amendment. *See e.g. Evans v. Ford,* Civ. No. 03-868-KAJ, 2004 WL 2009362, at *4 (D. Del. Aug. 25, 2004) (dismissing claim against DOC, because DOC is state agency and DOC did not waive Eleventh Amendment immunity). Finally, states and state departments of corrections are not considered persons who can be sued under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Lavia v. Pennsylvania Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (state departments of corrections are regarded as not having an existence apart from the state.).

-10-

Rainier's claims against the DOC have no arguable basis in law or in fact inasmuch as it is immune from suit. The claim is frivolous and the DOC is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### B. Personal Involvement/Respondeat Superior

Rainier raises numerous claims against certain defendants based upon the supervisory positions for allegedly implementing unconstitutional policies and enforcing them. For example he alleges: (1) during the fifteen days he spent in disciplinary segregation, Commissioner Carl Danberg ("Danberg"), Bureau Chief Richard Kearney ("Kearney"), Warden Perry Phelps ("Phelps"), Deputy Warden Pierce ("Pierce"), Klein, Costello, and Scarborough violated his Eighth and Fourteenth Amendment rights by creating, approving, and implementing policies and practices at the VCC that denied him reasonable access to basic hygiene materials such as soap, toothbrush and toothpaste; deprived him of any exercise outside his cell; and deprived him of access to a coat to keep warm during outdoor recreation in the winter months (D.I. 2, ¶¶ 193, 195, 196, 225, 226, 228); (2) the defendants Captain Rispoli ("Rispoli") and Captain Fowler ("Fowler") violated his rights by enforcing and allowing the policy and practice that deprived him of exercise outside his cell for fifteen days and that Rispoli, Fowler, and Burton violated his rights by enforcing and allowing the policy and practice that denied him reasonable access to basic hygiene materials and to a coat for outdoor exercise during the winter months (*Id.* at ¶¶ 199, 201, 202, 231, 232, 233); (3) Danberg, Kearney, Phelps, Pierce, Klein, Costello, and Scarborough violated his Eighth and Fourteenth Amendment rights by creating, approving, and implementing a policy and practice at the VCC to place inmates in black box restraints for a period of twenty-four hours (*Id.* at ¶¶ 194, 224); (4) Rispoli, Fowler, and Burton violated his

-11-

rights by enforcing and allowing the policy (*Id.* at ¶ 200, 230); (5) Danberg, Kearney, Phelps, Pierce, Klein, Costello, and Scarborough violated his Eighth and Fourteenth Amendment rights by creating, approving, and implementing a policy and practice at the VCC that subjected him to strip/body cavity searches while he was housed for fifteen days in the disciplinary unit (*Id.* at ¶ 192, 227); and (6) Rispoli, Fowler, and Burton violated his rights by enforcing and allowing the policy (*Id.* at ¶ 229). He also alleges that Phelps, Klein, Pierce, Costello, Scarborough, Rispoli, and Harvey violated his Eighth and Fourteenth Amendment rights when they placed him on suicide watch and housed him in the disciplinary segregation unit in an unsanitary cell and without constant medical supervision, instead of the infirmary. (D.I. 2, ¶¶ 220, 244.)

As is well established, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent

-12-

responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (11th Cir. 2010) (*quoting Iqbal* 129 S.Ct. at 1949.) The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, supervisory personnel are liable under § 1983 if they participated in, or had knowledge of, violations; if they directed others to commit violations; or if they had knowledge of and acquiesced in subordinates' violations. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995). Recently, the Third Circuit reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, No. 10-2128, 2010 WL 3259383 (3d Cir. Aug. 18, 2010) (citing *Iqbal*, 129 S.Ct. at 1948-49 (not published); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The Third Circuit noted that personal involvement may be established through: (1) personal direction or actual participation by the defendant in the misconduct; or (2) knowledge of and acquiescence in the misconduct. *Id.* The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit. *See, e.g., Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.) Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the

-13-

violation of a plaintiff's constitutional right.[12] *Williams v. Lackawanna County Prison*, Civ. No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal,* 129 S.Ct. at 1949-54; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not published).

Rainier's allegations that the supervisory defendants created, approved and implemented policies are similar to the allegations to *Iqbal* that were determined to be facially insufficient. *Iqbal*, 129 Sct. At 1949. In *Iqbal*, the plaintiff alleged supervisory officials violated his rights, in that one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See id.* at 1944. Here, Rainier's allegations are so vague and conclusory that they clearly do not satisfy the *Iqbal* requirement. He provides no specific facts as to how the supervisory officials violated his constitutional rights, that any supervisory

---

[12]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

defendant expressly directed the deprivation of his constitutional rights, or the creation of policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Finally, there are no facts alleged in the complaint to support Rainier's claim of the personal involvement of Phelps, Klein, Pierce, Costello, Scarborough, Rispoli, and Harvey when Rainier was on suicide watch and housed him in the disciplinary segregation unit rather than in the infirmary.

For the above reasons, the court will dismiss as frivolous the claims in paragraphs 192, 193, 194, 195, 196, 199, 200, 201, 202, 220, 224, 225, 226, 227, 228, 229, 231, 232, 233, and 244 against Danberg, Kearney, Phelps, Pierce, Klein, Costello, Scarborough, Rispoli, Harvey, Fowler, and Burton pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). For the same reasons, the court will also dismiss similar claims raised against Phelps, Klein, Pierce, Costello, Scarborough, Rispoli, Harvey, and Doe(s) pursuant to the Delaware State Tort Claims Act.[13] (D.I. 2, ¶¶ 250.)

### C. Due Process

Rainier raises due process claims relative to the time he spent in pre-hearing detention and on suicide watch in November 2008 and February 2009, respectively.[14] It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See*

---

[13]The court further notes that Rainier's claims under the Delaware Tort Claims Act do not meet the pleading requirements of *Iqbal*. Rainier merely alleges in a conclusory manner that the defendants were "grossly and wantonly negligent" without sufficient supporting facts.

[14]Rainier will be allowed to proceed with certain due process claims as set forth in the conclusion of this Memorandum.

*Wilkinson v. Austin*, 545 U.S. 209, 221-222 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245

(1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montayne v. Haymes*, 427 U.S. 236,

243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The custody placement or

classification of state prisoners within the State prison system is among the "wide spectrum of

discretionary actions that traditionally have been the business of prison administrators rather than

of the federal courts." *Meachum*, 427 U.S. at 225. Indeed, inmates have "no legitimate statutory

or constitutional entitlement" to any particular custodial classification even if a new classification

would cause that inmate to suffer a "grievous loss." *Moody v. Daggett*, 429 U.S. 78, 88 n.9

(1976). Therefore, the court finds that Rainier fails to state a claim of constitutional dimension

with respect to his housing in pre-hearing detention and on suicide watch.

Moreover, neither Delaware law nor Delaware Department of Correction regulations

create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. §

6529(e). "As long as the conditions or degree of confinement to which [a] prisoner is subjected

is within the sentence imposed upon him and is not otherwise violative of the Constitution, the

Due Process Clause does not in itself subject an inmate's treatment by prison authorities to

judicial oversight." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (finding that "administrative

segregation is the sort of confinement that inmates should reasonably anticipate receiving at

some point in their incarceration."). Courts have found that a prisoner's "procedural due process

rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a

deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life.'" *Mitchell v. Horn,* 318 F.3d 523, 531 (3d Cir.

2003) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).

The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin*, 515 U.S. at 480 (quoting *Hewitt v. Helms*, 459 U.S. at 468). In deciding whether a protected liberty interest exists under *Sandin,* a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d at 532 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). The Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. *See Young v. Beard*, 227 F. App'x 138 (3d Cir. 2007) (not published).

Rainier claims that a protected liberty interest was infringed upon when he was placed in pre-hearing detention and suicide watch, both for a period of fifteen days, more or less, and did not receive basic hygiene materials, outdoor exercise, or a winter coat for outdoor exercise. (D.I. 2, ¶¶ 225, 226, 228, 231, 232, 233, 235, 241, 242.) Placement into administrative confinement, without more, will rarely implicate a liberty interest. *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002); *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). Moreover, Rainier has pled no facts to support a claim that these conditions were atypical among Delaware state prisoners. *See Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002) (New Jersey inmate who had been confined to administrative segregation for 120 days had not "alleged the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Thus, with regard to the limited duration of time Rainier spent in pre-hearing detention, he fails to state constitutional claim on the facts alleged. *See Henderson v. Kerns-Barr*, 313 F. App'x 451 (3d Cir. 2008) (not published).

Based upon the relatively short time Rainier was confined to pre-hearing detention and on suicide watch, he lacks the requisite liberty interest to implicate a due process violation. For the above reasons, the court will dismiss as frivolous the due process claims found in the complaint at paragraphs 225, 226, 228, 231, 232, 233, 235, 241, and 242 pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Eighth Amendment

#### 1. Conditions of Confinement

Rainier alleges that Costello and Scarborough violated his Eighth Amendment rights by signing an order to feed him nutra-loaf for eighteen days as punishment. (D.I. 2, ¶¶ 197.) He alleges that the defendants Bryan, Malloy, Scott, and Rash violated his rights by depriving him of running water for twenty-four hours and a reasonable opportunity to eat his meals during the twenty-four hour period he was in black box restraints. (*Id.* at ¶¶ 210, 214.)

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Because a portion of Rainier's complaint centers around a twenty-four hour period, on a one-time basis, he fails to state a constitutional claim. *See Jackson v. Kane County*, Civ. No. 09 C 4154, 2010 WL 333695 (N.D. Ill. Jan. 26, 2010) ("Drawing on judicial experience and common sense, *Iqbal*, 129 S.Ct. at 1950, the court finds that a lack of running water in a particular prison cell block, though uncomfortable by itself, is not a serious deprivation of a basic human need"). Rainier's allegations as to lack of running water in his cell and no opportunity to eat for a twenty-four hour period do not amount to cognizable claims and, therefore, the claims will be dismissed.

With regard to Rainier's nutra-loaf allegations, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). A food loaf diet does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g., Ostrander v. Trippett*, 71 F. App'x 565, 566 (6th Cir. 2003) (not published); *see also LeMaire v. Maas,* 12 F.3d 1444, 1456 (9th Cir. 1993) (providing nutra-loaf, a nutritionally adequate blend of fresh ingredients designed to be given to inmates without eating utensils is not a deprivation serious enough to violate the Eighth Amendment).

Rainier has failed to state a cognizable claim under the Eighth Amendment. His conditions of confinement claims found in the complaint at paragraphs 197, 210, and 214 are frivolous and the court will dismiss them pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## 2. Failure to Protect

Rainier he alleges that Klein, Hawkins, Daum, Kemp, and Doe(s) violated his rights by sending him to Unit 21 knowing that "his life was being threatened if he went to population." (*Id.* at ¶ 221.) In addition, Rainier alleges that once he was sent to Unit 21, Phelps, Klein, Pierce, Costello, Scarborough, Rispoli and Doe(s) violated his rights by placing him in a cell with a severely mentally ill inmate who attacked and injured him. (*Id.* at ¶ 222.)

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); *see also Griffin v. DeRosa*, 153 F. App'x 851 (3d Cir. 2005) (not published).

The complaint alleges that Rainier expressed concerns regarding his safety in June 2009 that unnamed inmates would harm him upon a transfer to Unit 21. Rainier was not transferred until February 2010, some eight months later, and upon his transfer he was celled with Drozdowski. At that time, Rainier voiced his concern that Drozdowski, who is mentally ill, was unstable and not taking his medication. The complaint does not allege, however, that Rainier was concerned that Drozdowski would physically harm him or that Drozdowski was known for assaulting individuals. Nor are there allegations that any defendant knew that inmate Drozdowski would assault Rainier and they ignored that risk. Indeed, there are no allegations that there was any indication Drozdowski would take such action during the time the two were celled together prior to the time he attacked Rainier. In the case at bar, while the actions of the

-20-

prison officials might have constituted negligence because of their knowledge that Drozdowski

was mentally ill, the complaint fails to indicate that the incident was caused by deliberate

indifference on the part of the officials. Therefore, Rainier's allegations fail to state a cognizable

Eighth Amendment failure-to-protect claim. The court will thus dismiss the claims as frivolous

pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). (D.I. 2, ¶¶ 221, 222.) For the same

reasons, the court will also dismiss similar claims raised against Phelps, Klein, Pierce, Hawkins,

Daum, Kemp, Costello, Scarborough, Rispoli, and Doe(s) pursuant to the Delaware State Tort

Claims Act.[15]  (*Id.* at ¶¶ 252, 253.)

## IV. CONCLUSION

For the above reasons, the court will dismiss all claims against the DOC, Danberg,

Kearney, Phelps, Pierce, Klein, Scarborough, Costello, Burton, Fowler, Smith, and Kemp as

frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). (D.I. 2, ¶¶ 192-197, 199-

202, 210, 214, 220-222, 225-229, 231-233, 235, 241, 242, 244, 250, 252, 253.)

Rainier may proceed with the following claims: (1) Harvey violated his Eighth and

Fourteenth Amendment rights by giving the order to place him in black box restraints as

punishment; (2) Rispoli violated his Eighth Amendment and Fourteenth Amendment rights by

approving the order to place him in black box restraints; (3) Neal, Bryan, Scott, Beckles, Rash,

Mohr, Malloy, and Boone violated his Eighth Amendment rights by placing him in black box

restraints; (4) Bryan, Malloy, and Rash violated his Eighth Amendment rights by denying him a

reasonable opportunity to use the toilet facilities when was in black box restraints; (5) Neal,

---

[15]The court further notes that Rainier's claims under the Delaware Tort Claims Act do not
meet the pleading requirements of *Iqbal*. Rainier merely concludes the defendants were "grossly
and wantonly negligent" with sufficient supporting facts.

Bryan, Malloy, Rash, Mohr, Scott, and Boone violated his Eighth and Fourteenth Amendment rights by denying him a shower or other means to wash feces and urine from his body and to provide him a clean gown during the time he was held in black box restraints; (6) Neal, Bryan, Malloy, Rash, Mohr, Scott, and Boone were deliberately indifferent to his serious medical needs when there was feces on open wounds and they denied him medical treatment to clean the wounds; (7) Bane was deliberately indifferent to his serious mental health needs and failed to protect him from harm when he ignored Rainier's suicide threats; (8) Bryan subjected him to excessive force on February 9, 2009; (9) J. Burton, Gregory, McCarty, and Doe(s) violated his Eighth and Fourteenth Amendment rights when they subjected him to an unauthorized cell extraction; (10) Daum subjected him to excessive force when he sprayed him with two cans of capstun; (11) Malloy, Rash, Beckles, Boone, Scott, and Mohr failed to protect him from Bryan's use of force during the time he was in restraints; (12) Hawkins, Harvey, Neal, McCarty, Cessna, Furman, and Burman violated his rights by directly supervising, enforcing, and participating in a policy and practice to perform strip/body cavity searches; (13) J. Burton, Bryan, Beckles, Henry, Bayne, Gregory, Malloy, Rash, Boone, Scott, Mohr, and Doe(s) violated his rights by forcing him to submit to strip/body cavity searches; (14) assault and battery claims against Bryan under Delaware law regarding allegations that he choked and slammed Rainier's head into steel lockers causing injury, threatened to blow Rainier's head off with his laser sighted pistol, and placed extremely tight restraints on Rainier and against Daum when he sprayed Rainier with capstun; and Delaware State Tort Claims Act claims against Bane for ignoring Rainier's suicide threats and against Neal, Bryan, Rash, Boone, Malloy, Scott, and Mohr for leaving Rainier, who

had open wounds, covered in feces and urine for twenty-four hours. (D.I. 2 at ¶¶ 198, 203-209,

213, 215-219, 223, 230, 234, 236-240, 243, 245-249, 251.)[16]

An appropriate order will be entered.

_____, 2010
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE

_____

[16]The complaint does not contain paragraphs numbered 211 and 212.

-23-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEFFREY M. RANIER, SR., )
)
       Plaintiff, )
)
v. ) Civ. Action No. 10-498-GMS
)
DELAWARE DEPARTMENT OF )
CORRECTION, et al., )
)
       Defendants. )

**ORDER**

At Wilmington this __14th__ day of __Dec_____, 2010, for the reasons set forth in

the Memorandum issued this date, it is hereby ordered that:

1. The claims against the Delaware Department of Correction, Commissioner Carl

Danberg, Bureau Chief Richard Kearney, Warden Perry Phelps, Deputy Warden Pierce, Deputy

Warden Klein, Major Scarborough, Major Costello, Cpt. Burton, Cpt. Fowler, Lt. Smith, and

Counselor Linda Kemp are **dismissed** as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and §

1915A(b)(1). (*See* D.I. 2, ¶¶ 192-197, 199- 202, 210, 214, 220-222, 225-229, 231-233, 235, 241,

242, 244, 250, 252, 253.)

2. The court has identified what appear to be a cognizable and non-frivolous claims

against the defendants Sgt. Samuel Bane, Sgt. Bayne, Sgt. Wilfred Beckles, Correctional Officer

Boone, Sgt. Michael Bryan, Lt. Burman, Sgt. John Burton, Lt. Christopher Cessna, John Doe(s),

Lt. Mark D. Daum, Lt. Stephen Furman, Correctional Officer Gregory, Lt. Paul Harvey, Staff Lt.

Karen Hawkins, Sgt. Henry, Correctional Officer Mike Malloy, Lt. Ronald McCarty,

Correctional Officer Mohr, Lt. Maggielean Neal, Correctional Officer Jason Rash, Cpt. Rispoli,

and Correctional Officer D. Scott. The plaintiff is allowed to **proceed** against the foregoing

defendants on the claims found at D.I. 2, paragraphs 198, 203-209, 213, 215-219, 223, 230, 234, 236-240, 243, 245-249, and 251.

    3. The plaintiff has named John Doe(s) defendants. When the plaintiff learns the identity of the Doe defendants, he shall immediately move the court for an order directing amendment of the caption and service of the complaint on them.

    IT IS FURTHER ORDERED that:

    1. The clerk of the court shall cause a copy of this order to be mailed to the plaintiff.

    2. Pursuant to Fed. R. Civ. P. 4(c)(3) and (d)(1), the plaintiff shall provide the court with "USM-285" forms for the **remaining defendants Sgt. Samuel Bane, Sgt. Bayne, Sgt. Wilfred Beckles, Correctional Officer Boone, Sgt. Michael Bryan, Lt. Burman, Sgt. John Burton, Lt. Christopher Cessna, Lt. Mark D. Daum, Lt. Stephen Furman, Correctional Officer Gregory, Lt. Paul Harvey, Staff Lt. Karen Hawkins, Sgt. Henry, Correctional Officer Mike Malloy, Lt. Ronald McCarty, Correctional Officer Mohr, Lt. Maggielean Neal, Correctional Officer Jason Rash, Cpt. Rispoli, and Correctional Officer D. Scott** as well as for the **Attorney General of the State of Delaware**, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(C). **In addition, the plaintiff shall provide the court with sufficient services copies of the complaint for service upon the remaining defendants and the attorney general.** (D.I. 2.) **The plaintiff is notified that the United States Marshal Service ("USMS") will not serve the complaint until all "U.S. Marshal 285" forms have been received by the clerk of court. Failure to provide complete "U.S. Marshal 285" forms and service copies of the complaint, for the remaining defendants and the attorney general within 120 days from the date of this**

-2-

**order may result in the complaint being dismissed or the defendant being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

3. Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4. A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE: \*\*\*** When an amended complaint is filed prior to service, the court will **VACATE** all previous Service Orders entered, and service **will not take place**. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). **\*\*\***

-3-

8. **Note:** \*\*\* Discovery motions and motions for appointment of counsel filed prior to

service will be dismissed without prejudice, with leave to refile following service. \*\*\*

_____
CHIEF, UNITED STATES DISTRICT JUDGE